**In re LINCOLN NORTH ASSOCIATES, LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 93–14523–JNF.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 1, 1993.

Paul D. Moore, Choate, Hall & Stewart, Boston, MA, for debtor.

Michael C. Gilleran, Shafner & Gilleran, Boston, MA, for F.D.I.C.

## MEMORANDUM ON DEBTOR'S REQUEST FOR SANCTIONS

JOAN N. FEENEY, Bankruptcy Judge.

### I. PROCEDURAL BACKGROUND

Before the Court for determination are two motions filed by Lincoln North Associates, Limited Partnership (the "Debtor") seeking sanctions against the Federal Deposit Insurance Corporation (the "FDIC") and its counsel, Michael Gilleran ("Gilleran") for failure to cooperate in discovery in this Chapter 11 case; a motion for sanctions for the failure of Lyle E. Greenman ("Greenman") to appear for a Rule 2004 examination; and a motion for sanctions for the FDIC's failure to produce requested documents in response to "Debtor's First Request for Production of Documents." The Court allowed the Debtor's motion to compel the Greenman examination on August 6, 1993 and the Debtor's motion to compel production of documents on August 4, 1993.

The Debtor seeks sanctions under Fed. R.Bankr.P. 7037 for the FDIC's failure to cooperate in discovery and under Fed. R.Bankr.P. 9011 for the FDIC's filing of frivolous motions to obstruct discovery. The Debtor has provided a summary of fees for legal services, in the total amount of $15,311, incurred in opposing the FDIC's motions for relief from discovery orders and preparing motions to compel discovery. The FDIC has filed responses to both sanctions motions, and a hearing on the motions was held on August 12, 1993.

The Debtor holds all the beneficial interest in a nominee realty trust that owns an office building in Lincoln, Massachusetts. It filed a voluntary Chapter 11 petition on May 14, 1993. Prior to the commencement of this case, the FDIC's predecessor-in-interest, Bank of New England ("BNE"), commenced an action in United States District Court, District of Massachusetts, against the trust of which the Debtor is the sole beneficiary and the individual partners of the Debtor who guaranteed the mortgage loan to BNE. The Debtor asserts that the FDIC and the parties entered into a settlement agreement pursuant to that action in August, 1991, which was ratified, modified, and re-confirmed at various times thereafter. The Debtor further contends that the FDIC has violated the terms of the settlement agreement and that the agreement binds the FDIC in this case. The FDIC insists that a final settlement was not reached by the parties. The Debtor has also asserted claims alleging interference by the FDIC with the operations of the Debtor during the leasing phase which impaired the value of the Debtor's business, fraud and unfair and deceptive trade practices.

### II. FACTS RELATING TO RULE 2004 EXAMINATION OF GREENMAN

On June 4, 1993, the Debtor filed "Motion To Conduct Examinations Pursuant to Fed. R.Bankr.P. 2004" [1] ("the 2004 motion") in

---

1. Rule 2004 provides:
   (a) *Examination on Motion.* On motion of any party in interest, the court may order the examination of any entity.
   (b) *Scope of the Examination.* The examination of an entity under this rule 'or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization under chapter 11 of the Code, other than for the reorganization of a railroad,

which the Debtor sought to take depositions of eight present and former employees of the FDIC and its attorney in fact, Recoll Management Corporation ("Recoll") and any persons designated by either the FDIC or Recoll under Fed.R.Civ.P. 30(b)(6),[2] which is applicable to this proceeding by Fed. R.Bankr.P. 7030.[3] The motion further sought the production, at any examination, of thirteen categories of documents relating to the restructuring of the Debtor's loan; comparable restructuring proposals by other borrowers from August, 1991 through February, 1993; procedures followed by the FDIC and/or Recoll in restructuring loans; applicable insurance policies; and agreements between FDIC and Recoll and/or BNE. The FDIC filed an objection to the 2004 motion on June 16, 1993, which asserted that the examinations and documents requested by the Debtor exceed the broad scope of Rule 2004. The FDIC requested that the Debtor designate a single person for a deposition. The Court, by an order dated June 18, 1993, overruled the FDIC's objection and permitted the Debtor to proceed with the discovery requested in the 2004 motion. The order also made the rules governing adversary proceedings applicable to the contested matter between the FDIC and the Debtor.

On June 25, 1993, the FDIC filed a motion to dismiss the Chapter 11 case. Also on that day, the Debtor and the FDIC filed a joint motion to approve an agreement concerning the discovery schedule, for a hearing on cash collateral issues, and for an extension of the exclusivity period. The Debtor and the FDIC agreed to suspend discovery with the exception of the FDIC's response to the Debtor's first production request, which by agreement would be completed by July 1, 1993. The effect of the allowed motion was to postpone the deposition schedule until approximately July 23, 1993. Both parties also agreed to reserve the right to seek limitation of the scope of discovery and to seek to compel discovery. In mid-July, the FDIC's counsel and Debtor's former counsel agreed to resume discovery. On July 23, 1993, the FDIC filed a motion to postpone discovery pending a decision by the Court on the FDIC's motion to dismiss; this Court denied FDIC's motion to postpone on July 26, 1993. By letter dated July 29, 1993, the parties agreed to a deposition schedule and the examination of various persons, including the examination of Greenman, an attorney at

---

the examination may also relate to the operation of any business and the desirability of its continuance, the source for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan. (c) *Compelling Attendance and Production of Documentary Evidence.* The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at the hearing or trial. (d) *Time and Place of Examination of Debtor.* The court may for cause shown and on terms as it may impose order the debtor to be examined under this rule at any time or place it designates, whether within or without the district wherein the case is pending. (e) *Mileage.* An entity other than a debtor shall not be required to attend as a witness unless lawful mileage and witness fee for one day's attendance shall be first tendered. If the debtor resides more than 100 miles from the place of examination when required to appear for examination under this rule, the mileage allowed by law to a witness shall be tendered for any distance more than 100 miles from the debtor's residence at the date of the filing of the first petition commencing a case under the Code or the residence at the time the debtor is required to appear for the examination, whichever is the lesser.
Fed.R.Bankr.P. 2004.

2. Rule 30(b)(6) provides:

(6) A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized by the rules.
Fed.R.Civ.P. 30(b)(6).

3. Rule 7030 provides:

Rule 30 FR Civ.P. applies in adversary proceedings. Fed.R.Bankr.P. 7030.

Shafner & Gilleran, counsel to the FDIC in this case, to be held on August 9, 1993.

On August 2, 1993, the FDIC filed "Motion for Partial Reconsideration of the June 18th Discovery Order" in which the FDIC sought to limit document production and cancel two depositions of FDIC officials. As grounds for the motion, the FDIC argued that production of all loan summaries would be burdensome and that the two depositions were unnecessary. The Court denied the motion for partial reconsideration on August 4, 1993. On August 5, 1993, FDIC's counsel advised Debtor's counsel that Greenman would not appear for his examination. On August 6, 1993, the FDIC filed "Motion For Protective Order That Deposition of Retained Counsel Not Be Had" in which the FDIC sought to prevent the deposition of Greenman on August 9, 1993. The motion also maintained that the Debtor had not established the necessity for an examination of Greenman or that the information was not available by alternative means. On that same day, the Court denied the requested protective order.

After Greenman did not appear for the scheduled deposition, the Debtor filed the motion to compel Greenman's appearance and for sanctions. The Court allowed the motion to compel on August 9, 1993 and scheduled a hearing on sanctions for August 12, 1993. In response to Debtor's motion, the FDIC argues that Greenman's failure to appear is not sanctionable because Greenman was not under any court order to appear at the deposition. At the hearing on sanctions, Gilleran, counsel to the FDIC, stated that Greenman was not produced on August 9, 1993 because he had not yet learned of the outcome of the motion for protective order, which had been denied on August 6, 1993.

## III. FACTS RELATING TO FAILURE TO PRODUCE DOCUMENTS

On June 14, 1993, the Debtor's former counsel served on the FDIC the Debtor's production request in which the Debtor sought production of identified documents on or before June 17, 1993. The Debtor requested documents relating to Debtor's loan, procedures governing restructurings by Recoll, authority of any loan committee, insur-ance policies, and executive summaries concerning restructurings considered by any loan committee between August 15, 1991 and December 31, 1992. On June 17, 1993, the FDIC filed an objection to the request on the ground that the FDIC was not required to produce the documents in three days as demanded. On June 18, 1993, the Debtor filed "Motion To Shorten Time In Which To Produce Documents" in which the Debtor sought an order requiring the FDIC to produce the documents by June 21, 1993, on the ground that the Debtor needed the information to prepare for a hearing scheduled for July 15, 1993. No objection to the motion to shorten time was filed by the FDIC. On June 30, 1993, the Court allowed the motion to shorten time in part, extending the time for production by the FDIC until July 7, 1993.

In a letter dated June 17, 1993 to Gilleran, John J. Falvey, Jr. ("Falvey") of Hale & Dorr, predecessor counsel to the Debtor, requested compliance with the document request. On June 21, 1993, certain documents were produced by the FDIC. However, in a letter dated June 22, 1993 to Gilleran, Falvey objected to the production as incomplete because the FDIC did not provide any documents from the FDIC's attorneys' files, the so-called "core policy manual", any executive summaries, or a log of withheld or redacted documents. He further expressed concern that the failure to produce documents would disrupt the deposition schedule and offered to narrow the scope of the request for executive summaries (Request no. 13) on an interim basis. On June 23, 1993, Falvey again wrote to Gilleran expressing dissatisfaction with the document production which he termed as "inconsistent" with Gilleran's representations that all requested documents would be produced. In a fourth letter, dated June 25, 1993, Falvey requested further production of documents which had come to light at a deposition the previous day. The letter refers to an agreed production date, presumably of all documents, of "next week."

On July 1, 1993, the FDIC produced additional documents in response to the first production request. Attorney Falvey noted in a letter to FDIC's counsel, dated July 2, 1993, that the production did not include a

written response to the document request, a privilege list, or a policy manual. On July 22, 1993, Andrew Griesinger of Choate, Hall & Stewart, successor counsel to the Debtor, wrote to Gilleran requesting a discovery conference due to the incomplete state of production; he also renewed Falvey's offer to limit Request no. 13. On July 29, 1993, the FDIC produced minutes of two loan committee meetings. At a deposition on July 30, 1993, the FDIC's counsel represented that "90%" of the requested documents would be produced on August 2, 1993. On August 2, 1993, the FDIC produced one document—the service agreement between the FDIC and Recoll.

As noted above with respect to the Greenman deposition, on August 2, 1993, the FDIC filed "Motion for Partial Reconsideration of the June 18th Discovery Order" in which the FDIC asserted that the production of all executive loan summaries would be burdensome. The Court denied this motion on August 4, 1993. On August 3, 1993, the Debtor filed its motion to compel compliance with the document request, which motion the Court allowed the following day. The Debtor contends that the document production is still incomplete because the FDIC has not yet produced documents relating to settlement terms forwarded to various loan committees, status reports, or any documents in response to Request no. 13 and because the policy manual that was produced is redacted,

incomplete, and possibly, not the version applicable to the Debtor's negotiations with Recoll. On August 9, 1993, the FDIC filed "Motion for Stay of June 18th Order and Order Denying FDIC's Motion for Partial Reconsideration of June 18th Order Pending FDIC's Motion for Leave to Appeal re: Order Denying Motion for Partial Reconsideration of June 18th Order." The Court denied a stay of discovery pending the District Court's determination of the motion for leave pending appeal.

The FDIC's response to the Debtor's motion for sanctions asserts that the production was voluminous and difficult and that the FDIC produced many documents by July 7, 1993, as ordered by the Court on June 30, 1993. On August 16, 1993, the FDIC filed a motion requesting an extension of time to respond to the document production which seeks an order authorizing production at an uncertain date, that is, "[a]s soon ... as is practicable and adhering as closely as possible to the time estimates [of the FDIC] ..." The FDIC estimates that the production will take between three weeks and four months.

## IV. LEGAL PRINCIPLES

There are a variety of means by which this Court can insure that litigation before it is conducted in an orderly and productive manner, including 1) Fed.R.Bankr.P. 7037 (sanctions for failure to make or cooperate in discovery); 2) Fed.R.Bankr.P. 9011 [4] (sanc-

---

4. Rule 9011 provides:

(a) *Signature.* Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule *or* statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; *that to the best of the attorney's or* party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, *such as* to harass, *or* to cause *unnecessary* delay, or *needless* increase *in* the cost of

litigation *or administration of the case.* If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

(b) *Verification.* Except as otherwise specifically provided by these rules, papers filed in a case under the Code need not be verified. Whenever verification is required by these rules, an unsworn declaration as provided in 28 USC § 1746 satisfies the requirement of verification.

(c) *Copies of Signed or Verified Papers.* When these rules require copies or a signed or verified paper, it shall suffice if the original is

tions on counsel for signing and filing pleadings that do not have a legitimate purpose); and 3) 28 U.S.C. § 1927 [5] (sanctions on counsel or parties for excessive costs arising from vexatious litigation). The purpose of sanctions is to prevent unreasonable and costly delay and to foster the expeditious management of litigation. *See In re Bernard,* 85 B.R. 864, 867 (Bankr.D.Colo.1988).

Fed.R.Civ.P. 37(b)(2) [6] and 37(d) [7], made applicable to this proceeding by Fed.R.Bankr.P. 7037 [8], provide that a trial court may order sanctions for failure to comply with discovery, including discovery orders and deposition schedules. In addition to monetary sanctions, numerous decisions in this Circuit have imposed substantive sanctions for failure to obey discovery orders of the court. *See Spiller v. U.S.V. Laboratories, Inc.,* 842 F.2d 535 (1st Cir.1988); *Farm Construction Services, Inc. v. Fudge,* 831 F.2d 18 (1st Cir.1987); *Damiani v. Rhode Island Hospital,* 704 F.2d 12 (1st Cir.1983). The Supreme Court in *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747

---

signed or verified and the copies are conformed to the original. Fed.R.Bankr.P. 9011.

**5.** Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. § 1927 (West 1980).

**6.** Rule 37(b)(2) provides:

(2) *Sanctions by Court in Which Action is Pending.* If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

(E) Where a party has failed to comply with an order under Rule 35(a) requiring that party to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply shows that that party is unable to produce such person for examination. In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. Fed.R.Civ.P. 37(b)(2).

**7.** Rule 37(d) provides:

(d) If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c). Fed.R.Civ.P. 37(d).

**8.** Bankruptcy Rule 7037 provides:

Rule 37 FRCiv.P. applies in adversary proceedings. Fed.R.Bankr.P. 7037.

(1976) found that dismissal of a complaint under Rule 37 is warranted when failure to comply arises from "fault", "bad faith" or "willfulness" rather than "inability". 427 U.S. at 640, 96 S.Ct. at 2779, *citing, Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958).

■ Sanctions are appropriate where there is an intentional disregard of discovery orders. *See Farm Construction Services, Inc.,* 831 F.2d at 21; *Spiller,* 842 F.2d at 537. For example, the Rhode Island bankruptcy court in *In re DeConcilis,* 119 B.R. 880 (Bankr.D.R.I.1990), held that the defendants' obstruction of debtor's attempts to obtain discovery warranted the entry of default judgment against defendants. The court found that the record was fraught with examples of "outrageous conduct and intentional obstruction of the plaintiffs' attempts to obtain discovery." 119 B.R. at 881. "[T]heir repeated, willful indifference to all procedural, court imposed, and agreed upon discovery deadlines was done knowingly and in bad faith." *Id.* The Rhode Island court also examined the history of the nine month litigation period only to find "openly ignored orders of [the] Court" without any motions for extension of time to comply or any objections with detailed grounds. *Id.* at 887. The court characterized defendants' attitude as "cavalier" when defendants repeatedly made promises to comply with discovery but never kept same promises. *Id.* Finally, the court found the defendants' excuses inadequate, including defendants' protest that the discovery requests "were burdensome and required the production of numerous documents which were difficult to compile." *Id.* at 888.

The First Circuit in another decision, *Damiani, supra,* criticized plaintiff's counsel's "unilateral inaction without court approval" and set forth counsel's duty with respect to discovery disputes. 704 F.2d at 17. "A lawyer's first obligation is to make every effort to comply with the court's order. The second is to seek consent if compliance is, in fact, impossible. And the third is to seek court approval for noncompliance based on a truly valid reason." *Id.* ·The *Damiani* court noted, "[t]he day has long since passed when we can indulge lawyers the luxury of

conducting lawsuits in a manner and at a pace that best suits their convenience. The processing of cases must proceed expeditiously if trials are to be held at all." *Id.* at 16.

■ Sanctions may also be imposed on the client for counsel's defiant conduct:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.

*Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). Following *Link,* the First Circuit has also rejected the argument that a client should not be penalized for the sins committed by his counsel. *Farm Construction Services, Inc.,* 831 F.2d at 21; *Damiani,* 704 F.2d at 17. Instead, the client has an affirmative obligation to remain informed of all developments of an action, especially where he has instituted the action. *See Spiller,* 842 F.2d at 537; *In re A. Cardi Const. Co., Inc.,* 154 B.R. 403 (Bankr.D.R.I.1993).

■ The notion that a party is not required to appear at a deposition if he has filed a motion for a protective order is erroneous. *See Federal Aviation Administration v. Landy,* 705 F.2d 624, 634–35 (2nd Cir.1983), *cert. denied,* 464 U.S. 895, 104 S.Ct. 243, 78 L.Ed.2d 232 (1983); *Pioche Mines Consolidated, Inc. v. Dolman,* 333 F.2d 257, 269 (9th Cir.1964), *cert. denied,* 380 U.S. 956, 85 S.Ct. 1081, 1082, 13 L.Ed.2d 972 (1965). The deponent is relieved of appearance only if the order is allowed before the scheduled deposition. *King v. Fidelity Nat. Bank,* 712 F.2d 188, 191 (5th Cir.1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984). Otherwise the proposed deponent could avoid giving his deposition for an indefinite period of time. *Pioche,* 333 F.2d at 269. "Under the Rules, it is for the court, not the deponent or his counsel, to relieve him of the duty to appear." *Id.*

**410**

## V. DISCUSSION

■ Permeating the record in this case is the disregard by the FDIC and its counsel of both the orders of this Court and agreements made with the Debtor's counsel concerning discovery. The FDIC has ignored and violated at least three orders of this Court. With respect to Greenman's failure to appear, the Court issued an order on June 18, 1993, authorizing various examinations of FDIC agents, to be designated by the Debtor. The Debtor designated Greenman and the FDIC's counsel agreed to produce him on August 9, 1993. During the week before Greenman's scheduled examination, the FDIC's counsel indicated his intent not to produce Greenman as previously agreed. In an attempt to cancel the examination, the FDIC filed a motion for reconsideration on August 2, 1993, which the Court denied on August 4, 1993. On August 6, 1993, one business day before the examination, the FDIC filed a motion for protective order seeking to cancel the examination, which the Court denied on that date. Greenman's failure to appear at the examination has not been justified by any legitimate excuse. There is no merit to the contention that the FDIC was justified in not producing Greenman because Mr. Gilleran was unaware of the Court's decision of his motion for a protective order. In accordance with the orders of June 18, August 4, and August 6, and the letter agreement of July 29, 1993, Greenman was required to appear until the Court relieved him of that duty. *See King,* 712 F.2d at 191; *Pioche,* 333 F.2d at 269. FDIC's counsel had no right to unilaterally cancel the deposition, and, in doing so, he violated his agreement with counsel to the Debtor as well as orders of this Court.

■ Considerable foot-dragging is also evident in the FDIC's incomplete response to the Debtor's first request for documents, which the Court ordered to be completed by July 7, 1993. *See Spiller,* 842 F.2d at 537. The FDIC's piecemeal approach to document production in late July cannot be considered compliance with this Court's order of June 30, 1993. The FDIC has been aware of the Debtor's discovery requests since the middle of June but still has not yet completed the production of the requested documents. The Debtor sent four letters between June 17, 1993 and June 25, 1993, requesting compliance with the discovery request issued on June 14, 1993. The Court issued an order on June 29, 1993, requiring the FDIC to comply with the Debtor's document requests by July 7, 1993. Instead of complying with the court's order, the FDIC has repeatedly made empty promises that the documents would be forthcoming. For example, on July 30, 1993, during the deposition of Ms. Beth Mullen, counsel for the FDIC stated that it would produce "90%" of the documents requested by August 2, 1993. However, on that date, only one additional document was produced.

This Court finds the FDIC's persistent recalcitrance with respect to document production to be an intentional disregard of Court orders. *See Farm Construction Services, Inc.,* 831 F.2d at 19. The FDIC did not provide any evidence of a legitimate inability to produce documents. *See Id.* at 21. It did not seek a timely extension for production of documents. Instead, the FDIC chose to file in August an untimely meritless motion for partial reconsideration of the Court's discovery order issued June 18, 1993. Not until after the Court denied this motion did the FDIC offer the excuse that the discovery request was too voluminous and difficult to produce. If the FDIC objected to the production of documents, it was its obligation to timely file an objection to the Debtor's motion to shorten time. Not until August 16, 1993, did the FDIC request an extension of time to produce documents with respect to Request no. 13. In the motion to extend, the FDIC states that the document production will take between three weeks to four months to complete. The Court believes the FDIC has had ample time to assemble the requested documents as the Debtor's request originated almost three months ago in June. The Court finds the FDIC's excuses tardy and construes them as an obstruction of discovery.

## VI. CONCLUSION

■ Accordingly, as a sanction for violating the Court's orders and breaching agreements with Debtor's counsel, and for

unnecessarily increasing the costs of litigation in this case, pursuant to Rules 7037, 9011 and 28 U.S.C. § 1927, the Court orders FDIC and its counsel, Michael Gilleran, to pay the Debtor's counsel's fees in the amount $15,311, which the Court finds are reasonable based on the Court's review of the itemization of services rendered. In addition, as a further sanction for protracting the discovery process, in order to deter future violations of the procedural rules and or orders of this Court, the Court believes that the following substantive sanction is warranted: if the FDIC has not complied fully with the Debtor's outstanding document production request by September 17, 1993, or if the FDIC does not produce Greenman for examination by September 17, 1993, the FDIC shall be estopped to deny the existence of the settlement agreement as asserted by the Debtor. This deadline provides the FDIC a full three months to comply with the document request, which is the approximate amount of time requested by the FDIC in its most recent motion to extend filed on August 16, 1993.

## ORDER

In accordance with the Memorandum dated September 1, 1993, the Court hereby orders that the Federal Deposit Insurance Corporation ("FDIC") and its attorney, Michael C. Gilleran, forthwith pay to the Debtor the sum of $15,311 as sanctions pursuant to Fed. R.Bankr.P. 7037, 9011 and 28 U.S.C. § 1927. In addition, the Court believes that the following substantive sanction is warranted: if the FDIC has not complied with the Debtor's outstanding document production request by September 17, 1993, or if the FDIC does not produce Lyle E. Greenman for examination by September 17, 1993, the FDIC shall be estopped to deny the existence of the settlement agreement as asserted by the Debtor.